Cornelia **MADDREY**, Plaintiff Below, Appellant,

v.

**JUSTICE OF the PEACE COURT 13 and Arbor Management, d/b/a Compton Town Associates, LP,** Defendants Below, Appellees.

No. 616, 2007.

Supreme Court of Delaware.

Submitted: July 9, 2008.
Decided: Sept. 5, 2008.

Eric M. Davis (argued) and Mark Desgrosseilliers, Wilmington, Delaware, and Deborah I. Gottschalk, Community Legal Aid Society, Inc., Wilmington, Delaware, for appellant.

Michael P. Morton, Wilmington, Delaware, for appellee Arbor Management, d/b/a Compton Town Associates, LP.

Jennifer D. Oliva and Lawrence W. Lewis, Department of Justice, Wilmington, Delaware, for appellee Justice of the Peace Court 13.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

STEELE, Chief Justice.

Cornelia Maddrey appeals from a Superior Court judge's order, on a writ of *certiorari*, confirming a Justice of the Peace Court's order of possession to her landlord Arbor Management, d/b/a Compton Town Associates, LP (Compton). Split authority in Delaware courts over where common law writs of *certiorari* lie, and how those writs in Justice of the Peace Court summary possession cases should be reviewed, prompts us to answer three important questions for practitioners. We note at the outset that the General Assembly has provided in the Delaware Code for statutory writs of *certiorari* for the Superior Court to review the decisions of certain administrative agencies, such as the State Fire Prevention Commission [1] or a municipal Board of Adjustment.[2] This case addresses common law writs of *certiorari* and does not address those statutory writs of *certiorari*.

First, the Superior Court has original and exclusive jurisdiction among trial courts under the Delaware Constitution to issue common law writs of *certiorari* to inferior tribunals, including the Justice of the Peace Court, in all cases, regardless of subject matter. Second, the Superior Court's scope of review on common law writs of *certiorari* issued to any inferior tribunal in any type of case, is limited to errors on the face of the record. In this case, the Delaware General Assembly clearly intended the Justice of Peace Court to process landlord tenant summary possession cases quickly and summarily. The

Delaware Code provides that a party aggrieved by an initial single judge's judgment in a summary possession hearing may request a trial *de novo* before a three judge Justice of the Peace panel.[3] There the statutory process ends. While the common law writ of *certiorari* is available to correct errors on the face of the record, the General Assembly's intent would be frustrated by using that narrow review improperly to conduct the functional equivalent of traditional appellate review in Superior Court. Third, the record reviewable by the Superior Court on a common law writ of *certiorari* consists only of the complaint initiating the proceeding, any written answer or response, and the docket entries. The Justice of the Peace Court's hearing transcripts are not properly part of the record to be forwarded to the Superior Court in response to the Superior Court's issuance of a writ of *certiorari*. Although the Superior Court judgment from which this appeal is taken does not address all the issues we consider in this Opinion, we nonetheless affirm that judgment.

## FACTS

Cornelia Maddrey rented a unit from Compton from March 2003 until November 2006. In a March 28, 2006 letter, Compton informed Maddrey that it was terminating her rental agreement for cause. Her grandson, who lived with her, and an accomplice were wanted in connection with a shooting near the rental complex, thus facially violating a provision of Maddrey's rental agreement. On April 13, 2006, Compton filed a complaint for summary possession against Maddrey in Justice of the Peace Court Number 13. The General Assembly mandates exclusive jurisdiction

1. 16 *Del. C.* § 6610 (2008).

2. 22 *Del. C.* § 328 (2008).

3. 25 *Del. C.* § 5717(a) (2008).

in Justice of the Peace Court for summary possession proceedings.[4] After a trial, the Justice of the Peace entered judgment against Maddrey who then, as a matter of right, requested a trial *de novo* before a three judge Justice of the Peace panel pursuant to 25 *Del. C.* § 5717(a).[5] That panel, in turn, issued a judgment for possession for Compton on October 6, 2006. The docket entry from the Justice of the Peace Court summarizing that proceeding reads:

> The three judge panel is satisfied that the plaintiff Arbor Management ... has proven by a preponderance of the evidence, their right to terminate the lease with defendant, Maddrey and regain possession of the rental unit. Therefore judgment is awarded in favor of the plaintiff Arbor [Management] and against defendant Cornelia Maddrey for posession [sic] and $30.00 court costs.

The statutory framework for summary possession actions in the Delaware Code, Title 25, Chapter 57, provides for no further direct appeals.[6] As a consequence, Maddrey, believing the Justice of the Peace Court erred, filed a petition requesting that the Superior Court issue a writ of *certiorari*, an extraordinary common law writ directed to the Justice of the Peace Court.

A Superior Court judge confirmed the Justice of the Peace Court decision.[7] He held that the Justice of the Peace Court's finding that Compton met its burden of proof was not appropriately reviewable in a *certiorari* proceeding, and that the Justice of the Peace Court properly admitted the evidence proffered to it. The Superior Court judge also opined that the petition for the writ of *certiorari* should have been filed in the Court of Common Pleas and not in Superior Court, but he addressed the petition nonetheless in the interest of judicial efficiency.[8] Maddrey appeals from the Superior Court's order, arguing that the Superior Court judge erroneously failed to conclude that the three judge Justice of the Peace panel erred, by: (1) applying an incorrect burden of proof in the action; and (2) improperly admitting material evidence that affected the outcome of the case. Maddrey argues that these errors were "errors of law" properly reviewable by the Superior Court on a writ of *certiorari*. Both parties to this appeal agree that the Superior Court has original and exclusive jurisdiction to issue the writ of *certiorari* and to review the Justice of the Peace summary possession record.

## DISCUSSION

### I. Trial Court Jurisdiction to Issue Writs of *Certiorari*

The first issue we address is which trial courts have jurisdiction to issue writs of *certiorari* directed to the Justice of the Peace Court in summary possession cases. The Superior Court has issued inconsistent opinions on this issue. That inconsistency has caused much confusion in the Bar over where to file petitions for writs of *certiorari*, both generally and in summary possession cases. *Chelsea on the Square Apts. v. Justice of the Peace Court No. 13*, suggests, without analysis or explanation, that the Court of Common Pleas may issue a writ of *certiorari* to the Justice of the

---

4. 25 *Del. C.* § 5701 *et seq.* (2008).

5. 25 *Del. C.* § 5717(a) (2008).

6. 25 *Del. C.* § 5701 *et seq.* (2008). The statute provides for no appeal—either *de novo* or on the record.

7. *Maddrey v. Arbor Mgmt. d/b/a Compton Towne Assoc. LP,* 2007 WL 3287942 (Del.Super.Oct.26, 2007).

8. *Id.* at *2.

Peace Court in summary possession cases.[9] However, in *Howell v. Justice of the Peace Court No. 16,* a different Superior Court judge concluded that Superior Court had jurisdiction to issue a writ of *certiorari* directed to the Justice of the Peace Court in summary possession cases.[10]

The Superior Court, as the descendent of both the pre–1831 Supreme Court and Court of Common Pleas, has both original and exclusive trial court jurisdiction to issue writs of *certiorari* directed to the Justice of the Peace Courts. Before 1831, the Supreme Court and the Court of Common Pleas were Delaware's trial courts of law.[11] These two courts were statutorily vested with the same jurisdiction as the justices of the King's Bench, Common Pleas, and Chancellor of the Exchequer of England.[12] The English law courts had the power to issue writs of *certiorari* and thus, before 1831, the Supreme Court and the Court of Common Pleas had concurrent jurisdiction to issue writs of *certiorari.*[13] The Delaware Constitution of 1831, however, eliminated the Court of Common Pleas and vested a new Superior Court with the

same jurisdiction as the pre–1831 Supreme Court and Court of Common Pleas.[14] Like its predecessor trial court, the post–1831 Superior Court had the same jurisdiction as the King's Bench, Common Pleas, and Chancellor of the Exchequer of England.[15] In addition, since at least 1873, the General Assembly, by statute, explicitly vested in the Superior Court jurisdiction to issue writs of *certiorari.*[16]

■ The 1897 Constitution superseded the 1831 Constitution. Under Article IV, § 7 of the Delaware Constitution of 1897, the current Superior Court "shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law and all the other jurisdiction and powers vested by the laws of this State in the formerly existing Superior Court...."[17] In *Rash v. Allen* in 1910, the Superior Court, sitting as a "Court in Banc," held that:

> From this review of the constitutional provisions of our State, it is manifest that since 1831, the power of the Superior Court to issue writs of *certiorari,* and

---

**9.** 2007 WL 625365, at *2 (Del.Super. Jan. 12, 2007) (ruling that "[p]etitioner's complaint for a writ of *certiorari* was improperly filed in this Court, it should have been filed in the Court of Common Pleas.").

**10.** 2007 WL 2319147 (Del.Super. July 10, 2007). In a related order dismissing a petition for a writ of prohibition in the *Howell* case, *In re State Housing Authority,* 2007 WL 1531811 (Del. May 25, 2007), this Court wrote that "[t]he Superior Court has jurisdiction to decide the petition for a writ of *certiorari.*" The Court of Common Pleas in *Brandywine Apartments Associates, Ltd. v. J.P. Ct. of the State of Del.,* 1999 WL 33255921, at *4 (Del.Com.Pl.), concluded that it did not have statutory authority to issue a writ of *certiorari.* Subsequent Court of Common Pleas decisions have cited to *Brandywine* in support of denying writs of certiorari on jurisdictional grounds. *See, e.g., Haley v. Dept. of Transp., Div. of Motor Vehicles,* 2006 WL 1695137, at *1 (Del.Com.Pl.); *Wynne v. Shahan,* 2004 WL

1067518, at *1–2 (Del.Com.Pl.); *State v. Curtis,* 2004 WL 1067517, at *3 (Del.Com.Pl.).

**11.** *Howell,* 2007 WL 2319147 at *10 (citing DEL. CONST. of 1792, art. VI, § 8).

**12.** *Id.* (citing *Laws of the State of Delaware of 1829,* at 102, §§ 2, 15).

**13.** *Rash v. Allen,* 76 A. 370, 375 (Del.Super.1910).

**14.** *Howell,* 2007 WL 2319147 at *10 (citing DEL. CONST. of 1831, art. VI, § 3).

**15.** *Id.* (citing *Del. Revised C. of 1852,* ch. 92, § 1 (1873)).

**16.** *Id.* (citing *Del. Revised C. of 1852,* ch. 92, § 7 (1873)).

**17.** DEL. CONST. art. IV, § 7. Likewise, this Court's constitutional authority to issue a writ of *certiorari* is set forth in Article IV, § 11(7).

hear causes thereon, has been and is constitutional; and such being the case we think it will not be seriously contended that a jurisdiction which is constitutional could be taken away by statute.[18] Thus, the genesis of the Superior Court's authority to issue writs of *certiorari* is constitutional. No statute may strip the Superior Court of that power. Indeed, the Delaware General Assembly has explicitly, (although perhaps redundantly) vested the Superior Court with that power by statute.[19] 10 *Del. C.* § 562 provides that the "Superior Court may frame and issue all remedial writs, including writs of habeas corpus and *certiorari* ..."[20] Therefore, and from any perspective, the Superior Court's jurisdiction to issue writs of *certiorari* cannot be questioned.

Current confusion arises over whether 10 *Del C.* § 1324 has altered the Superior Court's exclusive jurisdiction to issue writs of *certiorari*. It is clear, given the plain meaning of the Constitution of 1897, that no General Assembly may, by statute, divest Superior Court of its authority to issue writs of *certiorari* to "inferior tribunals." But did the General Assembly by enacting 10 *Del C.* § 1324 intend to grant the Court of Common Pleas concurrent jurisdiction to issue writs of *certiorari* to the Justice of the Peace Court? The modern Court of Common Pleas became a constitutional court under Article VI, § 7B of the Delaware Constitution of 1897 in 2005.[21] That provision mandates that the Court of Common Pleas "shall have all the jurisdiction and powers vested by the laws of this State...."[22] Thus, the General Assembly may, by statute, determine the jurisdiction of the Court of Common Pleas.

The only statute addressing the processing of writs in the Court of Common Pleas is 10 *Del. C.* § 1324, which predates the Court of Common Pleas's change in status from a statutory to a constitutional court.[23] Section 1324 does not vest the Court of Common Pleas with any statutory authority to issue a writ of *certiorari* to the Justice of the Peace Court.[24] That statutory language simply provides:

> The Court shall have all the powers of a court of record possessed by the Superior Court of the State in the *endorsement* of *its* writs, rules, processes, the attendance of witnesses, the requiring of security for costs from nonresident plaintiffs, the production of documents, books and records and the production of all other necessary evidence.[25]

In the legal context, "endorsement" or "indorsement" refers to "[t]he placing of a

---

18. *Rash*, 76 A. at 375.

19. *See id.; Reise v. Bd. Of Bldg. App. of Newark, Del.*, 746 A.2d 271, 273 (Del.2000) (the 1897 Constitution granted the Superior Court "jurisdiction over *certiorari* proceedings"); *Shoemaker v. State*, 375 A.2d 431, 437 (Del. 1977) ("[u]nder the constitutional and statutory law of Delaware, both the Supreme and Superior Courts have authority to issue writs of certiorari"); *Fouracre v. White*, 102 A. 186, 195 (Del.Super.1917) (explaining that writs of *certiorari* and prohibition "were both common-law writs ... and the authority of our Superior Court to issue the same writs is not open to argument in view of [Delaware's] statutory and constitutional provisions."); *see also* I Victor B. Woolley, Practice in Civil Actions and Proceedings in the Law Courts of

The State of Delaware, § 896 (1906) ("As a broad general rule, a writ of *certiorari* lies from the Superior Court to inferior tribunals, to correct errors of law, to review proceedings not conducted according to law, and to restrain an excess of jurisdiction.").

20. 10 *Del. C.* § 562 (2008).

21. Del. Const art. IV, § 7B (2005).

22. *Id.*

23. 10 *Del. C.* § 1324 (2008).

24. *Id.*

25. *Id.* (emphasis supplied).

signature, sometimes with an additional notation, on the back of a negotiable instrument to transfer or guarantee the instrument or to acknowledge payment" or "[t]he signature or notation itself."[26] In the ordinary context, "endorsement" means essentially the same thing, with definitions including "[a]n act of endorsing", "[s]omething, as a signature or voucher, that endorses or validates", "[s]anction: approbation", or "[a]n amendment to a contract, as an insurance policy, allowing a change in the original terms."[27]

■ Applying these definitions, both the Superior Court in *Howell* and the Court of Common Pleas in *Brandywine* determined that the only reasonable way to interpret this provision is to conclude that where the Court of Common Pleas *does have power* to issue writs, those writs should be accorded the same power and legal weight as those writs issued by the Superior Court.[28] We agree with this interpretation. But 10 *Del. C.* § 1324 does not grant the Court of Common Pleas authority to *issue* writs. That statute merely provides the Court of Common Pleas the same power to *endorse* its own writs, *i.e.* only those writs statutes explicitly authorize the Court of Common Pleas to issue. If elsewhere the Court of

Common Pleas were separately granted the authority to issue a writ of *certiorari* to "inferior tribunals," it could *endorse* that writ with the same legal effect and in the same manner as the Superior Court endorses its own writs.

10 *Del. C.* § 1324 does not independently vest authority in the Court of Common Pleas to issue a writ of *certiorari*. It only directs that the Court of Common Pleas handle its writs in the same way Superior Court does. Unlike the comparable empowering statutes governing the Superior Court (10 *Del. C.* § 562) or the Supreme Court (10 *Del. C.* § 142), § 1324 does not address any specific writs. In no provision of the chapter treating the Court of Common Pleas does the Delaware Code even imply that writs of *certiorari* would be included.[29] Other provisions of the Code, however, do identify specific writs that can be issued by the courts in general.[30] The General Assembly has defined the jurisdiction of the Court of Common Pleas with regard to certain writs [31] and of the Superior Court and Family Court with regard to others.[32] The exclusion of writs of *certiorari* from the statutes that do grant jurisdiction to the courts generally, and to the Court of Common Pleas specifically,

**26.** BLACK'S LAW DICTIONARY 778 (7th ed.1999).

**27.** WEBSTER'S II NEW COLLEGE DICTIONARY 372 (2001).

**28.** *Howell v. J.P. Ct. No. 16*, 2007 WL 2319147, at *11 (Del.Super.); *Brandywine Apts. Assocs., Ltd. v. J.P. Ct. of the State of Del.*, 1999 WL 33255921, at *2 (Del.Com.Pl.).

**29.** *See* 10 *Del. C.* §§ 1301–1330.

**30.** *See, e.g.,* 10 *Del. C.* § 3103 (writ of summons); 10 *Del. C.* § 3501 (writ of domestic attachment); 10 *Del. C.* § 3506 (writ of foreign attachment); 10 *Del. C.* § 4951 (writ of *venditioni exponas*); 10 *Del. C.* § 4961 (writ of *levari facias*); 10 *Del. C.* § 5001 (writ of *liberari facias*); 10 *Del. C.* § 5011 (writ of possession); 10 *Del. C.* § 5031 (writ of attach-

ment); 10 *Del. C.* § 5041 (writ of *fieri facias*); 10 *Del. C.* § 5051 (writ of *capias ad satisfaciendum*); 10 *Del. C.* § 5071 (writ of *scire facias* on judgments).

**31.** *Compare* 10 *Del. C.* § 5085 (The provisions of this subchapter "[liens of execution] shall not apply to executions issued by the Court of Common Pleas or justices of the peace.") *with* 10 *Del. C.* § 1325(b) ("Writs of execution for the seizure and sale of personal property based upon judgments obtained in the Court, shall be issued in the manner provided by law for writs issuing out of the Prothonotary's office in and for the respective counties for the seizure and sale of personal property....").

**32.** *See* 10 *Del. C.* § 6901 ("The writ of habeas corpus shall be awarded and issued by the

evidences the General Assembly's intent, consistent with the Constitution of 1897, to limit the power to issue writs of *certiorari* to the Supreme Court and the Superior Court.

 Therefore, the Superior Court has original, and exclusive, trial court jurisdiction to issue writs of *certiorari* to the Justice of the Peace Court in summary possession cases. The Superior Court has original and exclusive trial court jurisdiction to issue common law writs of *certiorari* to all "inferior tribunals." The Court of Common Pleas *cannot* issue *common law writs* of *certiorari* for any purpose. Although now a constitutional court, Common Pleas has no current power to issue *statutory writs* of *certiorari*.

## II. Issues Reviewable on a Common Law Writ of *Certiorari*

This case presents the opportunity for us to reaffirm and further clarify the role of the *common law* writ of *certiorari* as a method of limited review in the Delaware court system. Although the structure of the court system and the jurisdiction of various courts to review the decisions of inferior tribunals have evolved over Delaware's history, the common law writ of *certiorari* has not changed. The General Assembly has provided in the Delaware Code for statutory writs of *certiorari*, enabling the Superior Court to review the decisions of certain administrative agencies, such as the State Fire Prevention Commission [33] or a political subdivision's Board of Adjustment.[34] Here, we address only common law writs of *certiorari*, and not particular statutory writs of *certiorari* or the scope of review the General Assembly provided for each by statute.[35]

 A writ of *certiorari* is "one of the oldest common law writs" and "its origins are obscure in the history of medi-

Superior Court except in cases involving child support enforcement in which case the writ shall be awarded and issued by the Family Court.").

33. 16 *Del. C.* § 6610 (2008).

34. 22 *Del. C.* § 328 (2008).

35. In *Rodenhiser v. Department of Public Safety*, 137 A.2d 392, 394 (Del.Super.1957), the Superior Court distinguished between common law writs of *certiorari*, at issue in that case, and statutory writs of *certiorari*:

This is a common law *certiorari* proceeding. See *Woolley on Delaware Practice*, Section 894. It is not a statutory *certiorari* such as has been created, for example, for the review of proceedings of the Board of Adjustment in zoning cases. See 22 *Del. C. § 328*. In that type of case, by reason of Statute, it appears that the evidence adduced before the Board may be a proper part of the record sent up on *certiorari*. The reviewable record in statutory *certiorari* proceedings differs, however, from that presented by common law *certiorari* proceedings.

Indeed 22 *Del. C.* § 331 specifically provides what constitutes the record on appeal for the writ of *certiorari* created in 22 *Del. C.* § 328, and thus identified what the Superior Court can properly review in those cases.

The board of adjustment shall not be required to return the original papers acted upon by it, but it shall be sufficient to return certified or sworn copies thereof or of such portions thereof as may be called for by the writ. The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision appealed from and shall be verified. The cost of a transcript of the hearing appealed from is the responsibility of the person appealing the decision. . . .

As another example, 16 *Del. C.* § 6610(b) creates a writ of *certiorari* for the Superior Court to review a decision of the State Fire Prevention Commission and 16 *Del. C.* § 6610(d) specifies the record to be returned to the Superior Court. For further discussion of the statutes where the General Assembly has provided for various ranges of review in *certiorari* proceedings, see *Goldstein v. Mun. Ct. of Wilmington*, 1991 WL 53830, at *5 n. 10, 1991 Del.Super. LEXIS 138, at *17 n. 10.

eval England...."[36] The writ "is simply a form that calls up, for review, the record from the lower court or tribunal."[37] "The purpose of the writ is to permit a higher court to review the conduct of a lower tribunal of record."[38] A writ of *certiorari* is *not* a substitute for, or the functional equivalent of, an appeal.[39] Review on a writ of *certiorari* issued by the Superior Court differs fundamentally from appellate review because "review on *certiorari* is on the record and the reviewing court may not weigh evidence or review the lower tribunal's factual findings."[40]

■■■■ Petitioners for a writ of *certiorari* must satisfy two threshold conditions: the judgment must be final and there can be no other available basis for review.[41] Those requirements are met here. There is no dispute that the decision of the three judge panel of the Justice of the Peace Court constituted the final trial adjudication of the summary possession complaint. The General Assembly, importantly, intended it to be so. "Summary" is *not* a word susceptible to many meanings. There is no statutory right to appeal from this decision.[42]

■■■■ If the petition meets the threshold requirements for the writ of *certiorari*, the court must determine if the petition raises the type of claim reviewable on *certiorari*.[43] The reviewing court does not consider the merits of the case. It considers only those issues historically considered at common law; namely, whether the lower tribunal (1) committed errors of law, (2) exceeded its jurisdiction, or (3) proceeded irregularly.[44] Evaluating

36. *Shoemaker v. State*, 375 A.2d 431, 436–37 (Del.1977).

37. *Reise v. Bd. Of Bldg. App. of Newark, Del.*, 746 A.2d 271, 273 (Del.2000).

38. *Christiana Town Ctr., LLC v. New Castle County*, 2004 WL 2921830, at *2 (Del. Dec.16, 2004); I Victor B. Woolley, Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware, § 894 (1906) ("certiorari is a writ issued by a superior to an inferior court of record, requiring the latter to send to the former ... the record and proceedings in some cause already terminated, to the end that a party who considers himself aggrieved by the determination of his rights by the inferior court ... may have justice done him.").

39. *See DuPont v. Family Ct. for New Castle County*, 153 A.2d 189, 194 (Del.1959) ("it is apparent that review by writ of *certiorari* is not the equivalent [of an appeal], for in such proceedings the evidence received in the inferior court is not part of the record to be reviewed in a *certiorari* proceeding.").

40. *Christiana Town Ctr., LLC*, 2004 WL 2921830 at *2 (citing *Reise*, 746 A.2d at 274); *Shoemaker*, 375 A.2d at 437 ("A certiorari proceeding differs fundamentally from an appeal in that the latter 'brings up the case on its merits while the ... (former) brings up the

record only so that the reviewing court can merely look at the regularity of the proceedings.") (internal citation omitted); *DuPont*, 153 A.2d at 194.

41. *In re Butler*, 609 A.2d 1080, 1081 (Del. 1992); Woolley at § 895.

42. *See Capano Inv. v. Levenberg*, 564 A.2d 1130, 1131 (Del.1989) (noting that "[t]his Court has long held that no appeal may be taken to Superior Court in summary possession actions" and 25 *Del. C.* § 5717(a) did not "confer a right of appeal to Superior Court, particularly in light of the language regarding 'final judgment' "); *Bomba's Rest. & Cocktail Lounge, Inc. v. Lord De La Warr Hotel, Inc.*, 389 A.2d 766, 769 (Del.1978) (noting that "historically, the Superior Court has not had jurisdiction over an appeal from a Magistrate Court in a case involving a summary action for possession of real property").

43. *See Shoemaker*, 375 A.2d at 437; *Butler*, 609 A.2d at 1082.

44. Woolley at § 896 ("As a broad general rule, a writ of *certiorari* lies from the Superior Court to inferior tribunals, to correct errors of law, to review proceedings not conducted according to law, and to restrain an excess of jurisdiction."); *see Cullen v. Lowery*, 2 Harr.

whether relief from the judgment below would be appropriate on each of these three issues, we explained in *Christiana Town Center, LLC v. New Castle County*, that "[a] decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has 'proceeded illegally or manifestly contrary to law.' "[45] Reversal on jurisdictional grounds is appropriate "only if the record fails to show that the matter was within the lower tribunal's personal and subject matter jurisdiction."[46] Reversal for irregularities of proceedings occurs "if the lower tribunal failed to create an adequate record for review."[47]

■ The common law writ of *certiorari* is directed narrowly for limited review of any type of case from any inferior tribunal. The case law in Delaware is clear on this point.[48] Nonetheless, it is suggested that we should endorse morphing that narrow review into full blown intermediate appellate review in circumstances where no further appeals are available. Ordinarily, Justice of the Peace Court judgments are appealable to the Court of Common Pleas *de novo*.[49] Review on a writ of *certiorari*, however, is understandably narrow, because in most instances there is available the much more comprehensive and attractive (but for the expense) trial *de novo*. In summary possession cases, however, no *de novo* trial option is available. From this it does not follow, however, that the writ of *certiorari* should be broader when issued in summary possession cases merely because there is no appeal option available. In the summary possession statute, the General Assembly could not have been clearer that summary possession cases should end quickly without further evidentiary review. A party can appeal the initial Justice of the Peace ruling to a three person Justice of the Peace panel.[50] The General Assembly demands that trial options end there. That definitive ending is not subject to even traditional appellate review.

■ The instant case suggests that common law writs of *certiorari* are being sought as an end run around the General Assembly's clearly expressed intent that no traditional appellate review lies in summary possession cases after a three judge hearing in the Justice of the Peace Court has concluded. Common law writs of *certiorari* in this context cannot, therefore, be the functional equivalent of an appeal.

292 (Del.Super.1837) ("But on a certiorari the court may reverse for *want of jurisdiction*, for not proceeding in the *manner the law directs*, and perhaps for *admitting and deciding* on *illegal evidence* alone, if this appear") (emphasis in original); *Handloff v. City Council of City of Newark*, 935 A.2d 255, 2007 WL 2359555, at *2 (Del.) ("The purpose of the writ is to permit a higher court to review the conduct of a lower tribunal of record, but review on *certiorari* is on the record and the reviewing court may not weigh evidence or review the lower tribunal's factual findings.") (quoting *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2) (internal quotation marks omitted); *Reise*, 746 A.2d at 274; *Butler*, 609 A.2d at 1081; *Green v. Sussex County*, 668 A.2d 770, 773 (Del.Super.) ("The scope of review, however, is limited to correct errors of law; to review proceedings not conducted according to law; and to restrain an excess of jurisdiction, all of which must appear on the record."), *aff'd*, 667 A.2d 1319 (Del.1995) (Table).

45. *Christiana Town Ctr., LLC*, 2004 WL 2921830, at *2 (quoting WOOLLEY at § 939).

46. *Id.*

47. *Id.*

48. *See supra* note 44.

49. 10 *Del. C.* § 9571 (2008).

50. 25 *Del. C.* § 5717(a) (2008).

The General Assembly could have provided for ordinary review *de novo*, traditional appellate review on the record or statutorily defined *certiorari* review. They did none of the above. To allow common law writs of *certiorari* to be used to prolong summary possession actions defeats the clear legislative intent to end those proceedings quickly. Landlords need to know whether they may move forward and tenants need to know whether they may remain on the premises for the balance of the lease or whether they must move on. Delay serves neither party.

Nevertheless, common law writs of *certiorari* may still direct inquiry to the three issues described above—all fundamental errors that appear on the face of the record of the summary possession proceeding and do not contemplate evidentiary review. According to Woolley on Delaware Practice § 897, "It is a general rule that on *certiorari* ... the reviewing court is confined to the consideration of the record returned in obedience to the writ, by which error, if any, must appear ..." [51] In *Castner v. State*, we noted, "[u]nder principles of law well established in this State, certiorari involves a review of only such errors as appear on the face of the record being considered." [52]

On a common law writ of *certiorari*, the Superior Court cannot look behind the face of the record. Rather, it can only review the record for the purpose of confirming an irregularity in asserting jurisdiction, an improper exercise of its power or the declaration of an improper remedy by the inferior tribunal. For a court to do anything more, such as combing the transcript for an erroneous evidentiary ruling as Maddrey asks us to sanction in this case, converts the limited *certiorari* review of summary possession into an impermissible full appellate review that is inconsistent with both the function of the common law writ *and* the General Assembly's intent to terminate landlord tenant possession disputes summarily.

As an example of an error properly reviewable on a writ of *certiorari,* the Superior Court can consider irregularities shown in the docket entries. In this case, one docket entry reads, "The three judge panel is satisfied that the plaintiff Arbor Management ... has proven by a preponderance of the evidence ..." However, if that docket entry had instead read, "The three judge panel is satisfied that defendant Cornelia Maddrey has failed to prove beyond a reasonable doubt ...", that docket entry would show on the face of the record an error of law in the proceeding. The panel's shift of the burden of proof to the defendant and changing "preponderance of the evidence" to "beyond a reasonable doubt" would have been an error of law apparent on the face of the record. Justices of the Peace should, in every case insure that the docket sheet, in order to create a reviewable record, reflects a short statement of the decision (as was done here) that explains who prevailed and the burden of proof applied. Similarly, the proper service of the complaint and an irregularity of process, a lack of jurisdiction, or a remedy ordered outside of statutory authority would also be reviewable from the face of the record.

### III. Record Reviewable on a Writ of *Certiorari*

The scope of review on a common law writ of *certiorari* drives our de-

**51.** I Victor B. Woolley, Practice in Civil Actions and Proceedings in the Law Courts of the State of Delaware, § 896 (1906); *see Goldstein v. Mun. Ct. of Wilmington*, 1991 WL 53830, at *4–5, 1991 Del.Super. LEXIS 138, at *16.

**52.** 311 A.2d 858, 858 (Del.1973) (citing *Schwander v. Feeney's*, 29 A.2d 369 (Del.Super.1942)); *Woolley* at § 897.

termination of what is properly considered to be the record in these cases.[53] Maddrey argues that failing to review the entire record would frustrate the *certiorari* process. Indeed it would, depending on what constitutes "the record" for review on *certiorari* as opposed to "functional" intermediate appellate review. However, as the Superior Court wrote in *Rodenhiser v. Department of Public Safety* in 1957, "[i]t is settled in this jurisdiction that the evidence before the lower tribunal is not a proper part of the record in a *common law certiorari* proceeding."[54] It is the common law writ of *certiorari* that the Superior Court issues to the Justice of the Peace Court in summary possession cases. Accordingly, in these cases the evidence presented to the Justice of Peace Court, including the testimony reflected in the transcript, is not a proper part of the record subject to Superior Court's review.

 The General Assembly did not design the Justice of the Peace Court, a statutory court, to be reviewed on a full record. Indeed, in all civil actions except summary possession, an appeal *de novo* is available. Therefore, only the record appropriate for common law *certiorari* review need be returned to Superior Court in response to the writ. That record is nothing more than the initial papers, limited to the complaint initiating the proceeding, the answer or response (if required), and the docket entries. Thus, the official record delivered by the Justice of the Peace Court to the Superior Court in response to the issuance of a common law writ of *certiorari* does not properly include a transcript of the evidentiary proceedings. In this case, the Justice of the Peace Court sent a transcript, together with the other papers, to the Superior Court. Apparently that court has done so routinely ever since it has had the capability to make a "transcript." However, what is actually put "in the box" does not make the record; the record is what legally should be in the box. The Justice of the Peace Court must not send evidentiary hearing transcripts to the Superior Court, because the Superior Court may not properly consider hearing transcripts in performing its limited duty on common law *certiorari*.

In *Castner v. State*[55], we noted that reviewing the transcript to evaluate the basis for the lower tribunal's decision "necessarily contemplates that the Court will weigh and evaluate the evidence." *Castner* implies that it would enlarge *certiorari* "as a device to circumvent the requisites of the appellate jurisdiction of this Court as established by the Constitution."[56] In later cases, we have also explained that *certiorari* review "is limited to errors which appear on the face of the record and does not embrace an evaluation of the evidence considered by the inferior tribunal."[57]

---

53. As explained in *supra* note 35, the record for review on statutory writs of *certiorari* is governed by the statutes creating each statutory writ and the scope of review for each.

54. 137 A.2d 392, 394 (Del.Super.1957) (emphasis supplied); *see DuPont v. Family Ct. for New Castle County*, 153 A.2d 189, 194 (Del. 1959) ("in [*certiorari*] proceedings the evidence received in the inferior court is not part of the record to be reviewed in a *certiorari* proceeding."); *Goldstein v. Mun. Ct. of Wilmington*, 1991 WL 53830; at **4–7, 1991 Del.Super. LEXIS 138; at **14–23 (discuss-

ing whether a transcript was properly part of the reviewable record); *Kowal v. State*, 121 A.2d 675, 675 (Del.Super.1956) ("the Supreme Court of this State has held that the evidence is not part of the record in certiorari proceedings.").

55. 311 A.2d 858, 858 (Del.1973).

56. *Id.*

57. *Mason v. Bd. of Pension Trs.*, 468 A.2d 298, 299 (Del.Super.), *aff'd*, 473 A.2d 1258 (Del. 1983).

Further, "[t]he transcript of the evidence below is not part of the reviewable record and the Court cannot examine the transcript in order to evaluate the adequacy of the evidence which supports the Superior Court's conclusion rendered below." [58] *Castner's* explanation of narrow review on common law *certiorari* drives our conclusion today to limit the actual record to a necessarily, correspondingly limited record for return to Superior Court.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is AFFIRMED.

**58.** *Green v. Sussex County,* 668 A.2d 770, 773 (Del.Super.), *aff'd,* 667 A.2d 1319 (Del.1995) (Table).