IN THE SUPREME COURT OF THE STATE OF DELAWARE

CHRISTOPHER J. TIGANI, SR.,              §
                                         §    No. 375, 2019
        Plaintiff Below,                 §
        Appellant,                       §
                                         §
        v.                               §    Court Below: Superior Court
                                         §    of the State of Delaware
C.I.P. ASSOCIATES, LLC,                  §
                                         §    C.A. No. N18C-12-241
        Defendant Below,                 §
        Appellee.                        §

Submitted:  February 7, 2020
Decided:    April 27, 2020

Before **VALIHURA**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and record below, it appears to the Court that:

(1)    The plaintiff below-appellant, Christopher J. Tigani, Sr., filed this appeal from a Superior Court order granting the motion to dismiss filed by the defendant below-appellee C.I.P. Associates, LLC. We conclude that the Superior Court did not err in granting the motion to dismiss. Accordingly, we affirm the Superior Court's judgment.

(2)     Tigani is the trustee of an irrevocable trust that formed World Class Wholesale, LLC ("WCW") in 2011.[1]  In November 2017, WCW entered into a one-year lease agreement with C.I.P. ("the Lease Agreement") for commercial rental space in Wilmington ("the Property").  At the same time that the parties entered into the Lease Agreement, Tigani and C.I.P. entered into a surety agreement ("the Surety Agreement").

(3)     Section 12.1 of the Lease Agreement provides that:

> Tenant will be in default of this Lease if any payment is received after it is due.  Tenant will be in default if Tenant fails to observe or perform any non-monetary agreement or obligation herein if Tenant fails to begin and diligently pursue curing the same within ten (10) days of Landlord giving notice of the violation.[2]

Notice is deemed given on the date received by the addressee as evidenced by personal delivery or posting on the property, return receipt, or if a requested return receipt is not signed, two days after the mailing of the notice.[3]  C.I.P.'s rights and remedies include all those "available to Landlord provided by law or equity even if not expressly set forth in this Lease."[4]  Section 10, which survives termination of the Lease Agreement, provides that:

---

[1] The factual background in this Order is drawn from the complaint, documents incorporated by reference or integral to the complaint, and the docket of the Justice of the Peace Court summary possession proceeding between the parties.
[2] Appendix to Opening Brief A041 § 12.1 (hereinafter referred to as "A__").
[3] A044 § 28.
[4] A041 § 12.1.

> Landlord may, but need not, deem abandoned any personal property (including but not limited to fixtures, trade fixtures, supplies and equipment) remaining in the Leased Premises at the expiration or earlier termination of this Lease and Landlord may without notice remove and dispose of the same in any manner Landlord desires and may repair and restore any damage caused thereby, all at Tenant's sole cost and without liability to Tenant.[5]

(4)    Effectiveness of the Lease Agreement was conditioned upon Tigani's execution of the Surety Agreement.[6]  Under the Surety Agreement, Tigani agreed to become surety to C.I.P. "for the due, punctual and full payment and performance of, and covenants with Landlord to duly, punctually and fully pay and perform all obligations of the Tenant under the Lease."[7]  Notice under the Surety Agreement was effective upon the earlier of receipt of the notice or two days after the sending of the notice.[8]

(5)    By March 2018, WCW was late on its rental payments.  C.I.P. filed a summary possession action against WCW and Tigani in Justice of the Peace Court No. 13 ("the Justice of the Peace Court Action").  C.I.P. sought possession of the Property and overdue rent.

---

[5] *Id.* § 10.
[6] A038.
[7] A052 § 1.
[8] A053 § 8.

(6)    After WCW and Tigani failed to appear for a May 8, 2018 hearing,[9] the Justice of the Peace Court entered a default judgment in favor of C.I.P. on July 9, 2018.  Neither WCW nor Tigani filed an appeal or motion to vacate the default judgment.  After the time to appeal or file a motion to vacate the default judgment had expired, C.I.P. requested a writ of possession for the Property, which the Justice of the Peace Court issued on August 1, 2018.  C.I.P. took possession of the Property on August 3, 2018.

(7)    On August 8, 2018, C.I.P. sent a letter, by certified mail, to WCW c/o Tigani at his residential address (which was also the address for Tigani in the Surety Agreement).   The letter stated that C.I.P. had taken possession of the Property and that if Tigani did not make immediate arrangements for removal of items found on the property, including payment of C.I.P.'s cost of storing the items between August 3rd and August 10th, then C.I.P. would dispose of the items.  On August 22, 2018, C.I.P. sent another letter, by certified mail, to WCW c/o Tigani at his residential address stating that C.I.P. had not received a response from him and therefore all items on the property were deemed abandoned under 25 *Del. C.* § 5715.  Tigani states that he did not receive or sign for either letter.

---

[9] On May 9, 2018, Tigani acknowledged the hearing on the previous day, but asked C.I.P. to hold off on changing anything until the following week when he planned to pay the rent owed.

4

(8)    Between September 2018 and December 2018, Tigani exchanged emails with C.I.P. representatives about paying some of the Justice of the Peace Court judgment and collecting his personal items from the Property.  In December, Tigani found some of his items in a dumpster on the Property.  According to Tigani, the items left on the Property at the time C.I.P. took possession were worth approximately $86,196.30.

(9)    On December 28, 2018, Tigani filed a complaint against C.I.P. in the Superior Court.  Tigani asserted claims for conversion and replevin.  C.I.P. filed a motion to dismiss the complaint.  After a hearing on C.I.P.'s motion to dismiss, the Superior Court allowed the parties to file supplemental submissions.

(10)   In an order dated July 24, 2019, the Superior Court granted C.I.P.'s motion to dismiss the complaint.  The Superior Court concluded that Tigani failed to state a claim for conversion because he had abandoned the items on the Property under 25 *Del. C.* § 5715 and therefore did not own the items at the time of C.I.P.'s disposal.  Tigani's abandonment under § 5715 also meant that he could not state a claim for replevin.  This appeal followed.

(11)   We review a trial court's granting of a motion to dismiss *de novo*.[10]  Only Chapter 57 of Title 25 and Part IV of Title 25 of the Residential Landlord–

---

[10] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).

Tenant Code apply to commercial rental agreements.[11] Commercial rental agreements are otherwise subject to general contract principles.[12]

(12) Tigani's arguments on appeal may be summarized as follows: (i) the Superior Court failed to apply the proper legal standard for a motion to dismiss and wrongly resolved factual disputes in C.I.P.'s favor; and (ii) the Superior Court ignored his lack of intent to abandon the items on the Property.

(13) Tigani is correct that the Superior Court was required to accept as true all well-pled allegations of facts in the complaint and to draw reasonable inferences in his favor in deciding the motion to dismiss.[13] But the Superior Court could also consider documents that were integral to and incorporated in the complaint.[14] "[A] claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[15] In addition, the Superior Court could take judicial notice of the "records . . . of any other court of this State"[16] and facts not subject to reasonable dispute.[17]

---

[11] 25 *Del. C.* § 5101(b).

[12] *Id.*

[13] *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del. 2001).

[14] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 68-70 (Del. 1995).

[15] *Malpiede*, 780 A.2d at 1083 ("Under Rule 12(b)(6), a complaint may, despite allegations to the contrary, be dismissed where the unambiguous language of documents upon which the claims are based contradict the complaint's allegations."). *See also Steinman v. Levine*, 2002 WL 31761252, at *8 (Del. Ch. Nov. 27, 2002), *aff'd*, 822 A.2d 397 (Del. 2003).

[16] D.R.E. 202(d)(1)(C).

[17] D.R.E. 201(b). *See also In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006).

(14) In arguing that the Superior Court failed to accept all of the allegations in the complaint as true, Tigani ignores the contents of his own complaint. Documents integral to and incorporated in the complaint included the Lease Agreement, Surety Agreement, and Tigani's communications with C.P.I. The complaint also referred to the Justice of the Peace Court Action, the records of which were subject to judicial notice.[18] The Superior Court did not err in considering documents integral to the complaint and the Justice of the Peace Court Action in deciding the motion to dismiss. Nor did the Superior Court err in declining to accept allegations as true that were contradicted by Tigani's own words and documents. For example, Tigani suggested that C.I.P. concealed the Justice of the Peace Court Action from him, but also alleged, and attached a May 9, 2018 email, in which he acknowledged the May 8, 2018 hearing in the Justice of the Peace Court.

(15) As to the facts that Tigani claims are disputed (primarily whether he received notice that he had seven days to claim items on the Property),[19] he is collaterally attacking things C.I.P. or the Justice of the Peace Court did (or allegedly did not do) in the Justice of the Peace Court Action. It is undisputed that Tigani and

---

[18] *See supra* n.16.

[19] In arguing that there is a factual dispute regarding whether he received the August 8, 2018 and August 22, 2018 letters, Tigani does not acknowledge that notice under the Lease Agreement and Surety Agreement was not limited to the receipt of a mailing. *See supra* ¶¶ 3, 4.

WCW did not move to vacate the default judgment under 25 *Del. C.* § 5712(b),[20] to stay the proceedings under 25 *Del. C.* § 5716,[21] or to appeal the Justice of the Peace Court's rulings under 25 *Del. C.* § 5717(a).[22]  Nor did he file a petition for a writ of *certiorari* in the Superior Court.[23]  Having failed to exercise his rights under Chapter 57 of Title 25 or in a petition for a writ of *certiorari* he may not then collaterally attack the Justice of the Peace Court's rulings in a conversion complaint in the Superior Court.  The Superior Court lacks jurisdiction to hear an appeal from a summary possession action under Chapter 57 of Title 25 in the Justice of the Peace Court.[24]  Tigani's arguments concerning the Superior Court's application of the legal

---

[20] This section provides that "[a] party may, within 10 days of the entry of a default judgment or a nonsuit, file a motion with the court to vacate the judgment and if, after a hearing on the motion, the court finds that the party has satisfied the requirements of Justice of the Peace Civil Rule 60(b), it shall grant the motion and permit the parties to elect a trial before a single judge or a jury trial."

[21] This section provides that "[w]hen a final judgment is rendered in favor of the plaintiff in a proceeding brought against a tenant for failure to pay rent and the default arose out of a good faith dispute, the tenant may stay all proceedings on such judgment by paying all rent due at the date of the judgment and the costs of the proceeding or by filing with the court an undertaking to the plaintiff, with such assurances as the court shall require, to the effect that defendant will pay such rent and costs within 10 days of the final judgment being rendered for the plaintiff."

[22] This section provides that "[w]ith regard to nonjury trials, a party aggrieved by the judgment rendered in such proceeding may request in writing, within 5 days after judgment, a trial de novo before a special court comprised of 3 justices of the peace other than the justice of the peace who presided at the trial, as appointed by the chief magistrate or a designee, which shall render final judgment, by majority vote, on the original complaint within 15 days after such request for a trial de novo."

[23] *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1212 (Del. 2008) (holding that the Superior Court had the original and exclusive jurisdiction to issue a writ of *certiorari* to the Justice of the Peace Court in a summary possession case).

[24] *Capano Invs. v. Levenberg*, 564 A.2d 1130, 1131 (Del. 1989); *Bomba's Rest. & Cocktail Lounge, Inc. v. Lord De La Warr Hotel, Inc.*, 389 A.2d 766, 769 (Del. 1978).

standard for a Rule 12(b)(6) motion to dismiss and resolution of factual disputes are without merit.

(16) Finally, Tigani relies on common law principles to argue that the Superior Court erred in ignoring his lack of intent to abandon the items on the Property. Under the common law, abandonment requires a lessor to establish the lessee's intent to abandon the property and an act by the lessee evidencing this intent.[25] The Superior Court relied on § 5715, not the common law, in concluding that Tigani abandoned items on the Property. Section 5715 provides:

> If, at the time of the execution of the writ of possession, the tenant fails to remove tenant's property, the landlord shall have the right to and may immediately remove and store such property for a period of 7 days, at tenant's expense, unless the property is a manufactured home and the rental agreement is subject to Chapter 70 of this title, in which case the manufactured home must be stored for a period of 30 days. If, at the end of such period, the tenant has failed to claim said property and to reimburse the landlord for the expense of removal and storage in a reasonable amount, such property and possessions shall be deemed abandoned and may be disposed of by the landlord without further notice or obligation to the tenant.[26]

---

[25] *Bank of Delaware v. Claymont Fire Co. No. 1*, 528 A.2d 1196, 1198 (Del. 1987).
[26] 25 *Del. C.* § 5715(e).

9

Tigani's intent was not relevant to abandonment under § 5715(e).[27]  The Superior Court did not err in finding that Tigani was deemed to have abandoned items on the Property under 4715(e) and could not state a claim for conversion or replevin.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Tamika R. Montgomery-Reeves*
Justice

---

[27] Even if § 5715(e) did not apply here, Tigani's intent is not relevant to abandonment under § 10 of the Lease Agreement, which survives termination of the lease and allows the landlord to deem personal property left on the premises abandoned and to dispose of that property without notice.  A041 § 10.